# Demott *versus* The Commonwealth.

1. Under the Act of April 13th 1867 (Desertion) the jurisdiction of the offence is not confined to the court of the county of the defendant's residence.

2. The warrant is returnable to the court of the county in which it issued, and the defendant is to be bound to appear there.

3. A father committed to answer a charge of deserting his child, was discharged on habeas corpus; this did not prevent a decree in the same proceeding for the support of his child.

4. The General Poor Law of 1836 applies to those cases only where a deserted wife or child is left a charge on the district and the application is by the guardians of the poor to levy on the property of the offender: Per AGNEW, J.

5. The Act of April 1867 is an additional remedy at the instance of the wife or child or some one on their behalf. *Id.*

6. The Act of 1867 refers to no distinct locality or settlement, or charge on any one, but provides for the arrest of the husband being in the Commonwealth. *Id.*

7. The information may be made by the wife or child before *any* magistrate of the Commonwealth. *Id.*

8. The warrant is of a quasi criminal offence, and issues against the *person*, not the *property*, of the deserter. *Id.*

9. The finding of the fact of desertion and neglect to maintain, is conclusive on the defendant until reversed. *Id.*

10. The act does not sever the parental relation nor deprive the parent of the custody of his child, when he makes out a proper case. *Id.*

11. Maintenance is the sole object of the act, and when the father is willing to maintain his child at home and makes a bonâ fide claim for this

[Demott *v.* Commonwealth.]

purpose, he may recover its custody; and may have a vacation of the decree on satisfying the court that he is maintaining it properly. *Id.*

12. The finding of the desertion and neglect to maintain, casts on the father the burden of proving his return to duty and his claim to a return of the child. *Id.*

13. *Habeas corpus* is not of *right*, to be used to transfer the custody of the person from one claimant to another. *Id.*

14. In such case the judge is to be guided by a sound discretion on the evidence. *Id.*

February 23d 1870.　Before AGNEW, SHARSWOOD and WILLIAMS, JJ.　THOMPSON, C. J., at Nisi Prius.

Certiorari to the Court of Quarter Sessions of *Philadelphia:* No. 238, to January Term 1870.

On the 2d of December 1869 Alderman Allison, of Philadelphia, issued a warrant against Elihu Demott, upon the oath of his wife, Emma Demott, charging him with deserting her and his child " on the 30th of July at the city aforesaid." The defendant was arrested, and on the 3d of December, as the record of the alderman showed the defendant, "Elihu Demott, residing at Hickorytown, Montgomery county," and John C. Hunter, were bound for the defendant's appearance at the next Court of Quarter Sessions of Philadelphia. On the 18th of December the defendant was surrendered to the sheriff on a bail-piece. On the same day he petitioned Judge Pierce, one of the judges of the Court of Common Pleas, for a habeas corpus. The case was heard on the habeas corpus on the 24th of December, before Judge Pierce, when the relator was discharged. On the same day a hearing was had on the charge of desertion, and the defendant was ordered to pay $6 per week for the support of his child, and give security, &c.

Depositions were afterwards taken to show that the residence of the defendant was in Montgomery county.

The defendant removed the case by certiorari to the Supreme Court. He there assigned for error :—

1. The Court of Quarter Sessions of Philadelphia had no jurisdiction of the case.

2. The Court of Quarter Sessions of Philadelphia were not competent to make an order for the support of a minor child of a person residing in Montgomery county.

3. The discharge of the defendant on habeas corpus is a dismissal of the whole complaint, and the order of support is irregular, nugatory and void.

*C. T. Bonsall* (with whom was *J. J. Lewis*), for plaintiff in error.—The alderman, under Act of March 30th 1821, Purd. 497, pl. 122, having ascertained the residence of defendant, should have bound him over to the Quarter Sessions of Montgomery county. Parol evidence may be given to show the residence : Dumber. *v.* Jones, 1 Ashm. 216 ; Lacock *v.* White, 7 Harris 498. The Act

[Demott *v.* Commonwealth.]

of April 13th 1867, Pamph. L. 78, Purd. 1472, only provides additional remedies; it does not repeal the Act of June 13th 1836, or the other poor-laws. They referred to sections 9, 28–30, 45 of the Act of 1836, Purd. 663, 796, 797, 799, pl. 14, 33–35.

*A. L. Hennerholtz* (with whom was *C. D. Freeman*), for defendant in error, referred to Act of 1867. It was the duty of the court to determine the whole matter before them: Cumberland *v.* Jefferson, 1 Casey 463. The legislature has the right to give the courts the powers conferred by the Act of 1867: Van Swartow *v.* The Commonwealth, 12 Harris 134; Byers *v.* The Commonwealth, 6 Wright 94; Rhines *v.* Clark, 1 P. F. Smith 101; Haines *v.* Levin, Id. 414; Irwin *v.* Irwin, 17 Leg. Int. 116.

The opinion of the court was delivered, March 3d 1870, by

SHARSWOOD, J.—The first two assignments of error raise the question whether the Court of Quarter Sessions had jurisdiction under the Act of Assembly of April 13th 1867, Pamph. L. 78, to make the order which was made in this case on a father residing in Montgomery county for the support of his minor child.

That act is entitled "An Act for the relief of wives and children, deserted by their husbands and fathers within this Commonwealth," and its provisions are expressly declared to be "in addition to the remedies now provided by law"—referring to those enacted by the General Poor Law of June 13th 1836, Pamph. L. 1839, and it may be by the Act of March 31st 1812, Pamph. L. 253, relating to this county. These remedies are at the instance of the guardians or overseers of the poor for the purpose of indemnifying the district in which the wife or child has a settlement against the charge. But the Act of 1867 provides a remedy for the wife or child, and enacts that the process for the arrest of the husband shall be issued by any alderman or justice of the peace upon information by the wife or children, or either of them, or by any other person or persons. The warrant issues to the sheriff or to any constable for the arrest of the person against whom the information is made, and he is to be bound over to appear at the next Court of Quarter Sessions there to answer the charge of desertion. It is enacted by the 4th section that if such person shall abscond, remove, or be found in any other county, he may be arrested by the warrant being backed in the mode provided for backing warrants by the 3d section of the Act of March 31st 1860. There is nothing whatever to confine the jurisdiction of the offence to the court of the county where the defendant has his residence or settlement. The whole scope and purview of the statute is inconsistent with such an intention. By the 2d section the information, proceedings thereon, and warrant shall be returned to the next Court of Quarter Sessions, evidently of the county in which

[*Demott v. Commonwealth.*]

the warrant issued, and to which the offender is to bound to appear, by the magistrate before whom the information was laid. Our Brother Agnew had occasion to consider this question on a habeas corpus granted by him for the body of this child, and came to the conclusion we have now expressed upon the proper construction of this Act of 1867: Comm. *ex rel.* Elihu Demott *v.* Emma Demott, 27 Legal Intelligencer 28.*

The 3d assignment of error is that the discharge of the defendant on habeas corpus is a dismissal of the whole complaint, and the order of support is irregular, nugatory and void. It is not easy to see how the discharge on habeas corpus can have such an effect as is here attributed to it. It released the relator merely from imprisonment by the sheriff under the warrant. He was then present in court regularly to answer the charge of desertion. The court proceeded immediately to hear and adjudicate upon that charge, and the order which they made was accurately conformable to the provision of the 2d section of the Act of 1867.

Order affirmed, and record remitted.

* The following is the opinion of Judge AGNEW, referred to:—

COMMONWEALTH *ex rel.* ELIHU DEMOTT *v.* EMMA DEMOTT and HENRY BARNDT.

Habeas corpus for the body of Eva Demott.

This is a habeas corpus issued at the instance of Elihu Demott to obtain the possession of his child, Eva Demott, a little girl five years and three months old. Upon a proceeding under the Act of 13th April 1867 (Brightly's Sup. 1472), he was sentenced by the Court of Quarter Sessions of Philadelphia, on the 24th December last, to pay the weekly sum of six dollars for the maintenance of Eva, on the ground of desertion and neglect to provide for her. The proceeding was upon the oath and at the instance of Mrs. Emma Demott, wife of the relator and mother of the child. After sentence the relator applied for the habeas corpus above stated, and the case was heard before me on the 8th of January 1870.

The question of the legal settlement of Elihu Demott at the time of the proceeding in the Quarter Sessions, has been much discussed in the argument, but it has scarcely anything to do with the question to be decided by me. The General Poor Law of June 13th 1836, as well as the Acts of 1812 and 1814, specially applicable to Philadelphia city and county, relate to those cases only where the wife or child of one who has deserted them is left a charge on the poor district, and the application is at the instance of the overseers or guardians of the poor for the primary purpose of levying on the property of the offender. But the Act of 1867 is designed by its own express language as an *additional* remedy at the instance of the *deserted wife or children*, or some one in their behalf. It refers to no distinct locality, or settlement or charge on any one, but provides for the arrest of any husband or father " *being within* the limits of the Commonwealth," who has separated from his wife or children without reasonable cause, and neglected to maintain them. The information made by the wife or children is not confined to any county or district, but may be made before *any* magistrate of the Commonwealth. The warrant issues not against the property, but against the person of the deserter wherever he may be, is of a *quasi* criminal nature, and like a warrant for a criminal offence may be backed by a magistrate of any other county where the offender may be found. It is evident this proceeding is intended as a remedy for the wife or child, the party

14 P. F. SMITH—20

[Demott *v.* Commonwealth.]

injured, is in the nature of a criminal charge for the desertion and neglect of maintenance, and is intended to reach the deserter wherever he may be. This being the case, the record of finding or *quasi* conviction of the fact of desertion and neglect to maintain the wife or child, is conclusive on the defendant in it, until reversed or set aside in due course of law.

But while this is the true character of the proceeding under the Act of 1867, there is nothing in the conviction and sentence in the Quarter Sessions under the law, which severs the parental relation, or can deprive the parent of the custody of his child when he makes out a proper case otherwise, for restoration to his custody and maintenance at home. The custody of the child is not the subject of the decree; it has been delivered to no one, and no district is charged with its maintenance.

Maintenance is the sole object of the act, and when the father is really willing to maintain his child at home, and makes a bonâ fide claim for this purpose, I see no reason why he shall not recover its custody, perform his duty, and go into the Quarter Sessions to obtain a suspension of the order, and in the end a vacation of the decree, on satisfying the court that he is maintaining it properly. The law should not receive a construction which would take from him *locum penitentiæ*, or prevent a return to parental duty. Such a construction would separate families beyond recall, and instead of a future gilded by hope, would make it dark and rayless for ever.

But while there is no mere legal barrier in the way of restoration, the record of the finding of the desertion and neglect of maintenance, certainly casts on the relator the burthen of proving his return to duty, and his claim to a return of his child. Having been guilty of a violation of parental duty by his desertion and voluntary neglect of maintenance as proved by the record, he cannot stand on his mere legal rights as a father, but must satisfy the judge to whom he applies for a restoration, that his application proceeds from proper motives and is for the best interests of his child. This I take it is the true question before me.

Upon a general survey of the evidence my mind is not fully satisfied on these points. The unhappy relations between Elihu Demott and his wife should not be referred to except so far as they bear on the custody of their child. It is sufficient to say that they separated on the 29th of July last, she taking Eva away with her. On the next day the unpleasant affair took place, which occurred at No. 2224 Wallace street in this city. From that time until after the proceeding for desertion in December last, he made no effort to regain his child. He says he did not know where she was. But the slightest effort would have discovered her with her mother, at her grandparents'; indeed, she had no other place to go to. It is only when the lash of the law is felt to smart, he is aroused to an effort at recovery. The circumstances may not require so harsh a judgment, but they rather tend to the inference that escape from the pecuniary burthen of the decree, or a desire to retaliate on the mother, by taking the child, prompts the present pursuit. His motive, it is said, is to rescue the child from the influence of a mother, whose contact will pollute the mind and morals of the child. If this be true, why has he been passive since July? His knowledge of his wife's character was the same then that it is now. Is it because he would take the child to a better home? His house is barren and without a head; left in the charge of thoughtless children by a former wife, and the probable authors of much of his present infelicity.

And I am not fully convinced that his wife is too unfit to be trusted with her own child. It is true he has proved against her language which only pollutes the lips of woman, but the evidence has also shown its cause. Her temper when aroused is no doubt high and impetuous; but manifestly she had much to try it. All these things plainly had their origin in their family jars, heightened by the presence and conduct of his children by his former wife. He has failed to show that Emma Demott is a woman of

[Demott *v.* Commonwealth.]

impure character, or that she is habitually profane and vulgar, or that her traits of mind and general conduct must exert a pernicious influence.    On the other hand, the proof is she loves her child, takes all the care of it a mother's solicitude incites, and her temper, unassailed by the irritating causes of her home with the relator, is no longer kept ablaze.    Upon the whole evidence I am satisfied, that possessing faults of temper and of judgment, yet she is not so vicious by disposition, or unfit by education and manners, as to require her child to be removed from her influence, in order to its welfare.    At the child's present age she needs a mother's tender care.

I consider it the well-settled doctrine of the writ of habeas corpus, that though it is a writ of right to remove the unlawful restraint of liberty, and restore from unwarranted imprisonment, it is not of right to be used to transfer the custody of the person from one claimant to another; but in such a case the judge administering the functions of the writ is guided by a sound discretion upon the evidence.    Guided by my convictions arising from all the evidence in the case, and by this sound discretion, I am of opinion that Eva Demott must be remanded to the custody of her mother, and that Emma Demott and Henry Barndt should be discharged.