## Commonwealth ex rel. v. Davis et al.

*Norris S. Barratt, Jr.,* for Commonwealth.

*Stanley L. Thornton,* for defendant and garnishee.

*William M. Boenning,* for James C. Connelly, claimant.

BONNIWELL, J., January 18, 1932.—The inception of these proceedings, begun under the Act of April 13, 1867, P. L. 78, and amendments thereto, took place in 1915, when, upon complaint of the deceased wife, Marie C. Davis, that her husband, the defendant, Joseph H. Davis, had without cause deserted her and her two dependent children, a petition was filed to compel defendant to contribute to their support. An order was entered September 20, 1915, commanding defendant to pay six dollars a week to his wife. Later the wife succeeded in locating defendant in Danville and lived with him there until about May, 1916, when defendant again deserted her without cause, and his wife never saw him again, being ignorant of his whereabouts. On May 2, 1916, the order of support, upon payment of $150 by defendant, was reduced to three dollars a week for the support of one child, John, the other child, Joseph A., being then under the care of Arthur J. Davis, his paternal grandfather. A third child, Margaret, was born on June 10, 1916, after the final desertion. The last payment on the support order was made on June 29, 1916, so that the balance remaining due, accruing weekly from 1916 on, was, on November 16, 1931, $2459. After final desertion, Marie C.

Davis returned to Philadelphia, where, except for certain intervals, she resided with her parents, James C. Connelly and his wife, until her death as the result of an automobile accident on March 24, 1929.

At the hearing it was disclosed in the evidence that since the final desertion took place defendant has been residing all these years in Pittsburgh, where he lived with another woman and had by her four children, now aged twelve, ten, nine and four and a half. The next circumstance was the death, intestate, of defendant's aunt, one Julia Mullarky, in September, 1930, leaving a considerable estate to her next of kin, her sister and her nephew, the defendant. Her sister, Margaret (Maggie) Monohan, died on December 30, 1930, leaving a will by which she bequeathed $500 apiece to her two grandnephews, defendant's two sons, Joseph A. and John E. Davis, with a residuary bequest to her sister Julia, which passed by lapse, of course, to her next of kin, the defendant. Defendant must have been informed of his good fortune, for he married the woman with whom he had been living in Pittsburgh for so many years on July 31, 1931, and took steps to obtain the property due him from the two estates.

In some way news of these events reached the grandparents of defendant's three minor children by Marie C. Davis, who have for some time been residing in their home, for the next step in these proceedings was a petition and order in favor of the Commonwealth for a writ of attachment execution directed against Arthur J. Davis, as administrator *c. t. a.* of the estate of Maggie Monohan, to secure payment of the arrears accumulated under the order of support, which writ was returnable August 3, 1931. Along with this were filed two petitions for warrants of seizure for future support of the three minor children, one directed against Arthur J. Davis, as administrator *c. t. a.* of the estate of Maggie Monohan, and the other against Bridget Harrison, as administratrix of the estate of Julia Mullarky, in favor of the Commonwealth on behalf of the Department of Public Health and Charities. These covered the funds of the two estates in the hands of the administrator and administratrix, alleged to amount to more than $23,500, and to be due to defendant as heir at law. The attachment and warrants of seizure were duly allowed. The answers of the garnishee administrator, Arthur J. Davis, denied possession of funds in the estate belonging to defendant, but these answers were superseded by a stipulation of counsel at the hearing. The garnishee administratrix, Bridget Harrison, filed an appearance and an answer admitting a balance for distribution due to defendant, Joseph H. Davis. At the hearing, counsel for defendant admitted liability for payment of the arrears accruing under the order of support, at that time amounting to $2435, and expressed his willingness to pay the same into court. A stipulation in memorandum form, agreed to by counsel, was filed as part of the evidence, as to the actual amount to be received by defendant, Joseph H. Davis, from the two estates, which comes to about $14,565. The precise figure is difficult to ascertain from the statement of the accounts of Arthur J. Davis, administrator, and the stipulation filed as evidence, but it may be assumed that this is the approximate sum to which defendant will be entitled. This does not include the two legacies of $500 each to John E. and Joseph A. Davis. Out of this sum must be paid the arrears on the order of the support, leaving a sum of approximately $12,000 distributable to defendant.

Subsequently, Joseph H. Davis, by his attorneys, filed a petition for a rule to show cause why the amount attached under the warrants of seizure and the attachment execution should not be reduced, and as to that directed against Bridget Harrison, administratrix, released altogether, averring his willingness to assume the custody and support of the three minor children by

his first wife, and alleging certain facts which, if proved upon a full hearing on the merits, he claimed entitled him to a reduction in the funds attached to the amount of $2500. All of these facts were brought out at the hearing and are dealt with below. Paper books of law were filed in support of the petition and James C. Connelly filed an answer thereto.

On November 4, 1931, an order was entered discharging the rule to quash the attachment, vacate the decree assessing arrears due and unpaid under the order of support and revoke the order of support, to which order defendant filed exceptions duly allowed.

A full hearing on the merits was had on November 19, 1931, on which date James C. Connelly filed a petition to be substituted as beneficiary in the place of Marie C. Davis, deceased, in the order of support of May 2, 1916, to which defendant filed his answer.

At the hearing on the merits, evidence was produced by both parties relating to the circumstances of the various parties and the support of the three minor children since the final desertion occurred, and the probability that the children will require support in the future.

From the proofs, the pleadings and admissions of the parties, the facts are found to be as follows:

### Findings of fact.

1. The defendant, Joseph Henry Davis, and Marie Connelly Davis were married on October 25, 1911, and for some years resided in Philadelphia. There were born to them three children, Joseph A., born June 10, 1912; John E., born October 13, 1913, and Margaret, born June 10, 1916.

2. In the latter part of 1915, after the court order of support of September 20, 1915, defendant without reasonable cause deserted his wife and two minor children, Joseph A. and John E. Davis, in Philadelphia. She subsequently went to him in Danville and there lived with him a short time, when, in May or June, 1916, defendant again deserted her and her children without reasonable cause, after the order of support was reduced to three dollars a week for the support of John E. Davis only, and subsequently defendant resided, unknown to Marie C. Davis, in the City of Pittsburgh with Caroline S. Trumbauer, by whom he has since had four children whose ages are twelve, ten, nine and four and a half years. Defendant was never divorced from Marie C. Connelly, and since the final desertion defendant has never made any effort to assist or obtain any knowledge of the condition or whereabouts of the said minor children.

3. Defendant's last payment on the order of support for the benefit of John E. Davis was made on June 29, 1916, and there has now accrued under the said order of support, up to November 16, 1931, the sum of $2459, which remains unpaid.

4. After final desertion by her husband in 1916, Marie C. Davis went to the home of her parents, James C. Connelly and his wife, in Philadelphia, where she lived until her death on March 24, 1929, with the exception of a few intervals, during which she supported herself by employment and resided at a separate place of abode, these intervals amounting to in all about two years from 1916 to 1929. During this period Marie C. Davis never saw her husband and was wholly ignorant of his whereabouts. The said Marie C. Davis during this period was supported to a large extent, if not wholly, by her parents, who supplied her with the necessities of life.

5. Upon his father's desertion, Joseph A. Davis was placed in the home of his paternal grandfather, Arthur J. Davis, where he resided and was by him supported and maintained from 1916 until February, 1926, at which time, on

account of the remarriage of Arthur J. Davis, he was compelled to leave the latter's home and enter the home of his maternal grandparents, James C. Connelly and wife, with whom he has since resided and who have since in a large measure supported him.

6. Upon his father's desertion, John E. Davis resided with his mother, Marie C. Davis, in the home of his grandparents, James C. Connelly and wife, except for certain brief visits to his mother during the intervals when she did not reside in the home of her parents, such visits lasting never more than a few days at a time. During the entire period from 1916 to the present time, John E. Davis has been supported and maintained almost entirely by James C. Connelly and his wife, who have supplied him with necessary medical attendance.

7. Upon her father's desertion, Margaret Davis resided with her mother in the home of her grandparents, James C. Connelly and wife, and has ever since remained there, even during her mother's absence, being supported and maintained and supplied with the necessities of life, including proper medical attention, by James C. Connelly and his wife.

8. Joseph A. Davis has been employed in gainful occupation at various times since taking up his residence with James C. Connelly and wife in February, 1926, but has not been so employed since October, 1930, though he has since attempted to find work. He is now in good health and able to engage in gainful employment, sufficient to sustain him in the future.

9. John E. Davis has suffered from ill health for the past several years; sustained a severe attack of inflammatory rheumatism in 1927, and was in that year confined to his bed for several months, part of which time was spent in a hospital, a condition which resulted in endocarditis and myocarditis of a serious nature and which has, since 1927, necessitated the constant care of a physician. He is now suffering from advanced valvular lesion of the heart, so that his condition of health is at all times precarious and is probably permanently impaired. In all probability, his health will require the continued services of a physician in the future, and is such that it is not likely that he can ever engage in gainful occupation so as to be self-sustaining.

10. During the whole course of John E. Davis's illness, and up to the present time, his grandfather and grandmother, James C. Connelly and wife, have cared for him and expended approximately the sum of $300 for necessary medical attendance and hospital expenses incurred by his sickness, and if he continues to reside with them, it is probable that they will be subjected in the future to like expenditures for the same purposes, in proportional extent.

11. Margaret Davis, in the past several years, has sustained a severe attack of pneumonia and pleurisy, was later confined to her bed for some months with a serious injury from being struck by an automobile, from which resulted permanent injuries impairing her ability to walk, and has been under the care of a physician since 1925. Her present condition of health is not good, but it is likely that she will ultimately be able to engage in gainful occupation and thus be in large measure self-sustaining. She was prevented by ill health from completing her high school career, but has now begun a business school course to be completed in 1933 which will fit her to engage in commercial life. The cost incidental to her attendance at school is between $50 and $100 per year, and so far this expense has been borne by her grandparents, James C. Connelly and wife.

12. The defendant, Joseph H. Davis, on July 31, 1931, in the City of Pittsburgh, was married to Caroline S. Trumbauer.

13. The defendant, Joseph H. Davis, maintains at the present time in the City of Pittsburgh a home wherein he resides with his wife and their four minor children, as set forth in paragraph two above. He was, prior to January 3, 1931, engaged in gainful occupation as a truck driver in that city for six months at a salary of twenty-five or thirty-five dollars per week, and prior to that was similarly employed for a period of over eleven years. Since January 3, 1931, defendant has been unable to obtain steady employment, though he has attempted to do so, and by occasional services has earned about twenty dollars. He now possesses no property or income of any substantial sort, with the exception of this interest in the two decedents' estates referred to in paragraph fourteen, and rents the home in which his family live at a monthly rental of eighteen dollars.

14. There is due and owing to defendant Joseph H. Davis, from Arthur J. Davis, administrator *c. t. a.* of the estate of Maggie Monohan, deceased, and from Bridget Harrison, administratrix of the estate of Julia Mullarky, deceased, the sum of approximately $14,565, now held in the hands of the said administrator and administratrix under the writ of attachment execution and the warrants of seizure.

15. Under the will of Maggie Monohan, deceased, defendant's two sons, Joseph A. and John E. Davis, are each entitled to receive a legacy of $500, which sums, less inheritance taxes of fifty dollars each, are now in the hands of the administrator of deceased and will in due course be payable to them.

*Discussion.*

First to be dealt with is the question of the disposition of the arrears, unpaid to date, which have accrued under the order of support as modified on May 2, 1916, for the benefit of the minor child, John E. Davis, wherein Marie C. Davis, now deceased, was named beneficiary. At the hearing on the merits, James C. Connelly filed a petition to be substituted as recipient of this fund, which was opposed by defendant on the ground that the original relator was entitled to the fund in her own right, and, hence, upon her death it was collectible only by her duly appointed personal representative as a debt due the estate. On account of the nature of these proceedings, under the Act of April 13, 1867, P. L. 78, the position of defendant is untenable. It is true that the purpose of such a proceeding "is not to punish the respondent for his conduct toward his family:" Com. *v.* Sherritt, 83 Pa. Superior Ct. 301, 303; but the action is quasi-criminal in character and is at the suit of the Commonwealth in behalf of the complainant, as revealed by our general practice and by the statute authorizing it. The district attorney is the proper prosecuting official: see Philadelphia *v.* Dezsi, 56 Pa. Superior Ct. 414; Rotan's Petition, 23 Dist. R. 110. The act authorizes commitment to prison for failure to comply with the order, and empowers the court to require security "to the commonwealth" for compliance with the order. Section three of the act declares that "all proceedings shall be in the name of the commonwealth." The act confers a very broad discretion upon the court in making the order, and in modifying or revoking it: see Com. *v.* Betts, 76 Pa. Superior Ct. 96; Com. *v.* Suess, 100 Pa. Superior Ct. 437. The proceeding is summary in nature wherein broad equity powers are permissible. In short, the Commonwealth is the party plaintiff and enforces the payment in its own right, bestowing the proceeds upon the proper person for the best interests of the party in whose favor complaint is made, and who is ordinarily, of course, the wife. It is noteworthy that the warrant may be issued on complaint of wife or children or "any other person, or persons:" Act of

April 13, 1867, P. L. 78, section 1. It is difficult to see why power should not rest in the discretion of the court to substitute an appropriate person as named beneficiary when circumstances, such as death, demand it.

The real beneficiary here, moreover, was not the deceased mother, but the infant child. Were the mother now living, there would be no obstacle to prevent her recovery of unpaid arrears due on the order of support, merely because, pending payment, she succeeded in maintaining her child. Otherwise, defendant could nullify the order as to each instalment as it accrued merely by failing to pay. No reason is perceived why a change in the named recipient, if he has maintained the real beneficiary and proved worthy of his charge, should fare worse, since the welfare of the child is the first consideration. Such would seem to be the implication of the opinion in Com. v. Allen, 79 Pa. Superior Ct. 40, where a somewhat similar effort was made to secure the payment of arrearages. It is clear that the primary duty of support rests upon the father and not upon the grandfather: Com. v. Milne, 90 Pa. Superior Ct. 68; Keller v. Com., 71 Pa. 413; Com. v. Cleary, 95 Pa. Superior Ct. 592. In this case we are not concerned with the question of the right to recover expenses previously and voluntarily incurred from the person upon whom the primary duty to support rested, as in Keller v. Com., supra.

That James C. Connelly may appropriately be substituted as named beneficiary under the order of support is beyond question. For the past fifteen years, with inconsiderable periods of time excepted, he and his wife have cared for the child, John E. Davis, have brought him up in their home and supplied all his wants and necessities. In the past few years this has meant a considerable outlay for medical attention during his long illnesses in an effort to conserve and improve his broken health. The way in which they have borne this heavy burden amply demonstrates their affectionate regard for him. There is no merit in the contention that James C. Connelly and his wife were mere volunteers. The grandparents never saw defendant from the time when he deserted his wife till these proceedings were revived; there is no indication that they knew of defendant's whereabouts, and they were under a duty to support their grandson. At the hearing, counsel for defendant expressed his readiness to pay into court the amount accrued under the order of support, which was $2459 as of November 16, 1931. This will be by no means excessive recompense for the benefits which they have afforded the boy. The order will be entered substituting James C. Connelly as beneficiary named in the order of support of May 2, 1916.

There remain the questions raised by the warrants of seizure, directed against the two decedents' estates, for the future support of the three minor children. Defendant Joseph H. Davis obtained a rule to reduce the amount attached under the warrant of seizure against Arthur J. Davis, administrator of the estate of Maggie Monohan, acknowledging his duty to support the three minors, and averring his willingness to take charge of the children and to provide a home for them and support, maintain and educate them. In the answer to the petition, filed by James C. Connelly, it is urged that defendant's intention to support these children is not bona fide and is so belated as to create suspicion of his motive. The evidence at the hearing at least tended to prejudice his good faith. He testified that upon learning of his aunt's death he came to Philadelphia "to get some money," but made no effort whatever to see or find out anything about his three children from whom he had so long separated himself. He declared he came across them at his father's house by chance. Now he comes forward with the proposition that he is will-

ing to take them into his home in Pittsburgh and provide for them, as a consequence of which he urges that no order for their support can now be leveled against him. It is apparent that defendant desires not so much the custody of his children as the custody of his money. It would be a gross injustice to require these minors to leave the shelter of their grandparents' home where they have lived for years and go to live in a distant city with their father, who has never shown the slightest interest in and consideration for them, on the remote possibility of his alleged change of heart. No sufficient evidence of change of circumstances or of bona fide intent on the part of defendant to provide a home for these children has been shown within the rule laid down in Keller v. Com., 71 Pa. 413, 417; Demott v. Com., 64 Pa. 302, 306; Com. v. Metzger, 33 Lanc. L. Rev. 50, 29 York Leg. Rec. 130.

The children's ages are now nineteen and a half, eighteen and fifteen and a half. Defendant suggests, citing the Act of July 12, 1919, P. L. 939, section 1, that the provisions for support under the Act of 1867 must be limited to children under sixteen years or those over sixteen years who by reason of infirmity are incapable of supporting themselves. This section of the statute appears to relate, however, only to the particular act itself, dealing with wilful separation as a misdemeanor. And it is settled that an order of support will not be revoked merely because the minor has reached the age of sixteen years: Com. v. Gillmor, 95 Pa. Superior Ct. 557, 97 Pa. Superior Ct. 303; Com. v. Remensnyder, 99 Pa. Superior Ct. 155.

If the merits of the situation are considered, the findings of fact make it plain that, of the three minors, at least John and Margaret are entitled to support. John E. Davis is now, and in all likelihood will always be, in precarious health and unable to support himself. Margaret appears to be in frail health, subject to a permanent disability, and as yet unfitted for gainful employment. She is entitled to support so long as she cannot maintain herself. Joseph H. Davis, on the other hand, is in good health, able to support himself and has worked in the past, though now unable to obtain employment. In view of the fact that Joseph will shortly receive his legacy of $450 and will be able to support himself at any time when he can secure employment, it seems inadvisable at the present time to make any order for his support out of the funds due his father. It is also to be borne in mind that John E. Davis will receive a similar legacy.

On the other side of the matter, it is to be considered that defendant's sole assets for the support of his large family in Pittsburgh consist of the funds in the two estates, that he has been out of work for a year without immediate prospects of securing employment, and that there is no evidence of any income accruing at present on these funds. It is settled that no order awarding a specific lump sum may be entered, the enabling statute not contemplating such a disposition: Com. v. Berardino, 96 Pa. Superior Ct. 288. But the mere fact that in the present situation there is no evidence of defendant's receiving any income from this large amount of money which came to him, as it were, by a windfall, should not preclude any order of support whatever under a strict application of the one-third rule (Com. v. Kramer, 80 Pa. Superior Ct. 210; Com. v. Herman, 95 Pa. Superior Ct. 510; Com. v. Suess, 100 Pa. Superior Ct. 437), where it is apparent that defendant himself will make good use of these assets, whether they bear income or not. "In considering the 'sufficient ability' of the husband referred to in the Act of April 13, 1867, P. L. 78, Sec. 1, not only the actual amount earned should be counted, but all the attendant circumstances must be considered:" Com. v. Knobloch, 89 Pa. Superior Ct. 216, 218. Defendant in his paper book suggests the entry of an order requiring the payment of three dollars weekly to each of the three chil-

dren. It would seem more equitable to decree the payment of six dollars a week to Margaret Davis and to increase the sum payable to John E. Davis under the present order of support from three dollars to four dollars per week, and the order now to be entered will be so worded. Defendant is at all times, of course, at liberty to apply for a reduction in these allowances or for complete revocation in the event of change in circumstances: Com. *v.* Mendelsohn, 83 Pa. Superior Ct. 593. Defendant's conduct in the past with reference to this obligation inclines the court to the view that the warrants of seizure should not be lifted until defendant enters bond in the sum of $3000 conditioned upon the payment of this order, with sufficient surety.