Commonwealth of Pennsylvania ex rel. *v.* Leinbach,
Appellant.

Argued December 11, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Robert S. Bachman,* and with him *Eugene J. Corrigan,* for appellant.

*Franklin E. Barr,* Assistant District Attorney, and with him *Charles F. Kelley,* District Attorney, for the Commonwealth of Pennsylvania.

*Philip S. Polis,* and with him *Clinton A. Sowers* and *Robert V. Bolger,* for relator, Marie A. Leinbach.

OPINION BY BALDRIGE, J., March 3, 1934:

These appeals attacking the validity of two warrants of seizure issued by the municipal court were argued together and will be disposed of in one opinion.

Each proceeding originated by the filing of an affidavit by the wife of Samuel A. Leinbach, alleging that she was destitute and that her husband, the appellant, since May, 1932, had neglected to support her; and by the presenting of a petition by the Department of Public Health and Charities of the City of Philadelphia, averring that the husband has money, rights and credits to the amount of $500 in the Reading Trust Company, trustee, under the will of Mary Catherine Leinbach, in the one case, and in the other case, a like amount under the will of Rev. Samuel Leinbach, both late residents of the City of Reading. The petitioner prayed in each case that a warrant of seizure issue, attaching so much of the said money, rights and credits in the hands of the Reading Trust Company, trustee, as may be reasonable for her maintenance. The warrants of seizure were accordingly ordered to be issued by Judge BROWN, President Judge of the municipal court, sitting as a magistrate. The Reading Trust Company was served, appeared, and filed answers setting forth that it has in its hands, as trustee, in the Mary Catherine Leinbach estate, monies of Samuel A. Leinbach, the appellant, amounting to

$642.96, but that at the time of the service of the attachment, it had no funds due him from the estate of Rev. Samuel Leinbach.

On the 29th of May, 1933, Samuel A. Leinbach, the husband, presented petitions alleging that the proceedings were defective and that the municipal court was without jurisdiction. Rules were granted to show cause why the proceedings should not be quashed. The garnishee filed supplemental answers; the first contained the same allegations as set forth in defendant's motion to quash, and the second averred that the trustee, on June 16, 1933, when the case was pending in court, had received from defendant's attorney a copy of a paper, bearing date of June 21, 1932, purporting to be an assignment by Samuel A. Leinbach of his interest in the two estates which had been attached. Judge Lewis discharged the rule to quash the proceedings, and, without a hearing on the merits, ordered and decreed that the Reading Trust Company, trustee under the will of Mary Catherine Leinbach, pay to Marie A. Leinbach, through the municipal court, the sum of $642.96 for her support; that the trustee under the will of Rev. Samuel Leinbach, the garnishee, pay to the clerk of the municipal court "all monies that may now be due and payable to the said Samuel Leinbach, defendant, as well as any future monies that may hereafter become due and payable, all of which may more fully appear in answer filed by the said garnishee;" and that the clerk of the municipal court pay all monies that may be received by him to Marie A. Leinbach, wife of the appellant, for her support. It is from these orders that the appeals were taken.

The appellant's first contention is that the wife living at No. 6818 North 18th Street, Philadelphia, is a resident of the Bristol poor district, and not of the poor district of the City of Philadelphia; that these

proceedings were brought under the Acts approved March 21, 1812, P. L. 251, §6 (5 Sm. L. 391), and June 13, 1836, P. L. 539, §29 (62 PS §1981), and should have been instituted by the guardians of the poor, as provided in the former act, or the overseers of the poor, as provided in the latter act; and that the warrants or orders should have been obtained from two aldermen or two justices of the peace instead of from a judge of the municipal court sitting as a magistrate.

A study of our poor laws, beginning in 1705 (2 St. at L.) and extending down to the present time, discloses numerous statutes relating to relief of the poor and the procedure to be followed. In these various acts, the poor may come under the guardians of the relief and employment of the poor of the township, or guardians of the poor, or board of health, or department of charities and correction, or department of public health and charities, or department of public health, or department of public welfare. We will not attempt to blaze a path through these statutes relating to poor districts in Philadelphia County. It is sufficient to state that one engaged in examining them is apt to join heartily in the statement made by Mr. Justice KEPHART in Com. ex rel. Schnader v. Liveright et al., 308 Pa. 35, 83, 131 A. 697, that "The classification of poor districts is and always has been very badly mixed up. They do not adhere to county lines, and, as we understand, in some instances overlap into other counties. Parts of cities are joined with parts of townships and separate districts within a city." The department of welfare in Philadelphia is now charged, as stated in that case, with the duty formerly devolving on the poor authorities, "except as to six specially created poor districts." It will thus be observed that in Philadelphia County there are a number of separate and distinct poor districts, including the Bristol poor district. Fortunately, in view

of subsequent legislation, referred to later, which we think controls this case, we are not required to determine the extent of the powers and proper procedure of the overseers, etc., in various districts, as provided in earlier acts.

The second contention advanced by the appellant is, that the warrants of seizure could not be lawfully issued at the instance of the wife and district attorney. An act was passed April 13, 1867, P. L. 78 (18 PS §1251), entitled "For the relief of wives and children, deserted by their husbands and fathers, within this Commonwealth," which provides: "In addition to the remedies now provided by law, if any husband, or father, being within the limits of this Commonwealth, has, or hereinafter shall, separate himself from his wife or from his children......without reasonable cause, or shall neglect to maintain his wife or children, it shall be lawful for any alderman, justice of the peace, or magistrate of this Commonwealth upon information ...... to issue his warrant ....... for the arrest of the person against whom the information shall be made, as aforesaid, and bind him over, with one sufficient surety, to appear at the next court of quarter sessions, there to answer the said charge of desertion." In Scott v. Scott, 80 Pa. Superior Ct. 141, 146, Mr. Justice LINN, then a member of our court, in referring to the Acts of 1836 and 1867, supra, said: "They are no less poor laws because they afford remedies directly enforceable by the wife instead of through overseers of the poor or other officer." See, also, Demott v. Com., 64 Pa. 302, 304; Com. v. Hawkins, supra. It thus appears that the poor authorities of Bristol Township do not have the exclusive right at least to institute a proceeding in behalf of a deserted wife.

We concede that a proceeding under the Act of 1867 is not an action in rem—as is a proceeding under the

Act of 1836—as no authority is given for warrants of seizure of property. But in all actions, whatever their nature may be—personal or in rem—which involve desertion of a wife by a husband, the municipal court, under the Act of July 12, 1913, P. L. 711, creating that court, has jurisdiction. Section 11 (a) (17 PS §694a) expressly provides that the jurisdiction of the municipal court shall be exclusive in *all* (italics ours) proceedings brought against any husband or father, wherein it is charged that he has without reasonable cause separated himself from his wife or children, or from both, or has neglected to maintain his wife or children. Section 13 (17 PS §696) provides, inter alia, that it shall be the duty of the district attorney to prosecute all cases in which prosecutions have been begun in the municipal court. No longer is it necessary to obtain a warrant or order from two aldermen or two justices of the peace; it may issue upon the application of the district attorney, or a wife, the party primarily interested: O'Connor's Appeal, 104 Pa. 437. We think the clear intent of our laws is to protect deserted wives and children in so far as possible, and legislation with that object in view should be liberally interpreted. The tendency has been to enlarge, not restrict, the municipal court's jurisdiction in cases of this character. We are of the opinion, therefore, that the proceeding was properly instituted, and that the municipal court's jurisdiction includes the right to issue any form of process in desertion cases that has heretofore been vested in aldermen; or justices of the peace, or courts of quarter session of Philadelphia County.

The defendant's argument, however, that he was unjustly deprived of his right to be heard is well founded. While it is stated in the paper books, and in the court's opinion, that he originally appeared d.b.e., the record does not disclose that fact; but it

does show that an answer was filed. The appellant, through his counsel, says he is not a fugitive; that he has a good defense; and that he desires a hearing on the merits. The Act approved May 10, 1921, P. L. 434, §1 (48 PS §136), provides: "Whenever any court of competent jurisdiction has *made an order* or *entered a decree or judgment* (italics ours) against any husband requiring him to pay any sum or sums for the support of his wife or children or both, the court may issue the appropriate writ of execution against any property, real or personal, belonging to the defendant to enforce said order, decree or judgment, and the said court may issue a writ of attachment execution, or writ in the nature of attachment execution, against any money or property to which said husband is entitled ...... said levy or attachment shall only be for fifty per centum thereof, and shall remain a continuing levy until the order, decree, or judgment has been paid in full, with costs." In our view, whatever act is invoked by, or in behalf of, a deserted wife, the facts alleged should be proven, and a husband, if he so desires, should be given an opportunity to have his day in court before the making of such a drastic order which deprives him of "all monies that may now be due and payable ...... as well as any future monies that may hereafter become due and payable." The wife's right depended, not on alleged or assumed, but proven, facts. A finding of fact unsupported by evidence is baseless. If the alleged desertion is established, then an appropriate order may be made. Section 6 of the Act of 1812, supra, states: "The court should order the payment of such sums as they think reasonable." This language, as we interpret it, means that a hearing should be had and facts presented upon which to base an order. Denying one a hearing is not consistent with the reasonable administration of justice. The order of the

learned court below in disregard of the defendant's right to be heard was irregular and unauthorized. As there is nothing, therefore, to support the attachment, it must inevitably fall. We held in Com. v. Peterson, 100 Pa. Superior Ct. 600, that compensation payments were subject to warrant of seizure under section 6 of the Act of 1812 and section 29 of the Act of 1836, supra. But in that case an order of support in favor of the wife and two minor children was entered prior to the issuance of the warrant.

It is unnecessary for us to determine whether the municipal court has jurisdiction to issue a warrant of seizure attaching funds outside the county of Philadelphia; but because we have not done so, it may not be assumed we are holding that it has jurisdiction. We will answer that question when it arises.

Nor are we concerned at present as to whether the alleged assignment of defendant's interest in the funds attached is valid or invalid. That may be a question for subsequent consideration.

The order in each appeal is reversed with a procedendo.